**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**DAVID L. PADGETT,**

       Plaintiff,

**v.**                                                        **Civil Action No. 3:10-CV-08**
                                                            **(BAILEY)**

**ONEWEST BANK, FSB,**
**d/b/a INDYMAC MORTGAGE SERVICES,**

       Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

       Currently pending before the Court are Defendant Onewest Bank, FSB's Motion to

Dismiss [Doc. 11], filed March 15, 2010; Defendant's Motion to Stay [Doc. 15], filed April

1, 2010; Defendant's Motion to Strike [Doc. 18], filed April 5, 2010; and Plaintiff's Motion

to Correct [Doc. 19], filed April 5, 2010.  Plaintiff responded to the motion to dismiss on

March 29, 2010, and the defendant replied on April 12, 2010.  Plaintiff responded to the

motion to stay on April 2, 2010, and the defendant filed no reply.  Plaintiff responded to the

motion to strike on April 7, 2010, and the defendant filed no reply.  Defendant filed no

response to the motion to correct.  The Court has reviewed the record and the arguments

of the parties and, for the reasons set out below, concludes that the defendant's Motion to

Dismiss [Doc. 11] should be **GRANTED IN PART** and **DENIED IN PART**, the defendant's

Motion to Stay [Doc. 15] should be **DENIED**, the defendant's Motion to Strike [Doc. 18]

should be **DENIED**, and the plaintiff's Motion to Correct [Doc. 19] should be **GRANTED**.

## BACKGROUND

### I.   Factual Allegations

The plaintiff, David L. Padgett, alleges the following facts in the challenged First Amended Complaint [Doc. 9].   On April 12, 2006, the plaintiff entered into a home mortgage, secured by a deed of trust, with IndyMac Bank, F.S.B. ("IndyMac") for the plaintiff's home located in Martinsburg, West Virginia.  ([Doc. 9] at ¶ 8).  On December 18, 2007, the plaintiff filed a Chapter 7 bankruptcy petition, listing IndyMac as a secured creditor.  (Id. at ¶ 10).  On February 1, 2008, IndyMac filed a motion in the bankruptcy court seeking relief from the automatic stay so that it could proceed to foreclose on the plaintiff's residence.  (Id. at ¶ 11).  By the end of April 2008, the plaintiff was one month in arrears on his home mortgage loan.  (Id. at ¶ 13).

On April 30, 2008, the parties filed an Agreed Order in the bankruptcy court resolving IndyMac's motion to lift the automatic stay.  (Id. at ¶ 14).  Pursuant to this Agreed Order, the plaintiff's mortgage was deemed current as of May 1, 2008, and the one payment for which the plaintiff was in arrears was added onto the end of the mortgage.  (Id. at ¶¶ 15-16).  The first payment due under the Agreed Order was due in May 2008.  (Id. at ¶ 17).  The plaintiff made the May 2008 payment in a timely fashion and has made his monthly mortgage payment each month after May 2008, up to and including the date of the filing of the plaintiff's First Amended Complaint.  (Id. at ¶¶ 18-19).

In March 2009, Defendant OneWest Bank, F.S.B. ("OneWest") purchased IndyMac, whereupon IndyMac Mortgage Services ("IndyMac MS") became a division of OneWest. (Id. at ¶¶ 20-21).  On July 16, 2009, OneWest, doing business as IndyMac MS, sent the

plaintiff a letter claiming he was one month behind on his payments. (Id. at ¶ 22). In response, on July 28, 2009, the plaintiff wrote to OneWest, enclosing a copy of the Agreed Order from his bankruptcy proceeding and requesting that OneWest supply him with documentation that he nevertheless remained one month behind. (Id. at ¶¶ 24-26). Again, on August 3, 2009, and September 16, 2009, IndyMac MS sent letters to the plaintiff alleging he was behind on his mortgage payments. (Id. at ¶¶ 28-29).

On September 30, 2009, the plaintiff, through counsel, wrote to the attorneys who represented IndyMac in connection with the plaintiff's bankruptcy proceedings. (Id. at ¶ 31). This letter reminded them of the terms of the Agreed Order and informed them that the plaintiff was current in his mortgage payments. (Id. at ¶¶ 32-33).

On October 7, 2009, OneWest sent the plaintiff a statement alleging that $1,247.06 was past due on his account. (Id. at ¶ 35). Again, on November 30, 2009, the plaintiff's counsel wrote to the attorneys who represented IndyMac in connection with the plaintiff's bankruptcy to remind them of the terms of the Agreed Order and inform them that the plaintiff was current in his mortgage payments. (Id. at ¶¶ 37-39).

On December 4, 2009, OneWest wrote to the plaintiff demanding payment of $186,715.61. (Id. at ¶ 41). In response, the plaintiff requested verification of the alleged debts. (Id. at ¶ 43). OneWest replied on December 17, 2009, enclosing a one-year payment history, which showed that the plaintiff had made his monthly payments in a timely fashion each month and that OneWest had imposed a $15.00 late charge on the plaintiff's account each month. (Id. at ¶¶ 44-47).

On December 16, 2009, December 18, 2009, January 19, 2010, and January 21, 2010, OneWest either wrote directly to the plaintiff demanding payment of an alleged one-

month arrearage or sent him a statement alleging that $1,247.06 was past due on his account.  (Id. at ¶¶ 48-55).  Since this time, OneWest continues to assess monthly late fees against his account and has informed credit reporting agencies that the plaintiff's mortgage is delinquent, though plaintiff alleges he is current on his monthly mortgage payments.  (Id. at ¶¶ 56-59).

## II.   Procedural History

On January 11, 2010, the plaintiff brought suit in the Circuit Court of Berkeley County, West Virginia, asserting claims against OneWest and IndyMac MS pursuant to state law, including, *inter alia*, the West Virginia Consumer Credit and Protection Act, W.Va. Code § 46A-2-122, *et seq.*  ("WVCCPA").  On February 12, 2010, OneWest, noting that it does business as IndyMac MS, removed the above-styled action to the Northern District of West Virginia on the basis of diversity jurisdiction [Doc. 4].

On February 18, 2010, OneWest filed a Motion to Dismiss. [Doc. 6].  In its motion, OneWest argued that the plaintiff failed to state a claim upon which relief can be granted.  ([Doc. 6] at 1-3).  Specifically, OneWest argued that all of the plaintiff's claims for relief were preempted by the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461, *et seq.* ("HOLA").  (Id. at 4).

On February 24, 2010,[1] the plaintiff filed the challenged First Amended Complaint [Doc. 9], which contains eight counts.[2]  Counts I, II, and III arise under the WVCCPA.  In

_____

[1]Effective December 1, 2009, "[a] party may amend its pleading once as a matter of course within . . . 21 days *after* service of a motion under Rule 12(b) . . .."  Fed. R. Civ. P. 15(a)(1)(B) (emphasis added).

[2]This Court notes that the claims are not set forth in the First Amended Complaint as numbered counts.  Instead, they are labeled "First Claim For Relief," and so forth.  For

Count I, the plaintiff alleges that the letters written by OneWest violate the unfair debt collection provisions of the WVCCPA.  ([Doc. 9] at ¶¶ 60-68).  Specifically, the letters written after September 30, 2009, constitute violations of W.Va. Code § 46A-2-128(e) because OneWest knew as of that date that the plaintiff was represented by counsel with respect to the debt.  (Id. at ¶ 66).  Moreover, each of the letters written after July 15, 2009, is a separate fraudulent, deceptive, or misleading representation of the character, extent, or amount of OneWest's claim against the plaintiff, in violation of W.Va. Code § 46A-2-127(e).  (Id. at ¶ 67).  In Count II, the plaintiff alleges that each time OneWest charged the plaintiff's account for late fees, it committed a separate violation of W.Va. Code § 46A-2-128(d) because the plaintiff's account was current.  (Id. at ¶ 75).  In Count III, the plaintiff alleges that each late fee charge is also a separate unfair and deceptive practice prohibited by W.Va. Code § 46A-6-104.  (Id. at ¶ 80).

In Counts IV, V, and VI, the plaintiff alleges defamation, breach of contract, and negligence on the part of OneWest.  (Id. at ¶¶ 82-101).  In particular, the plaintiff alleges that OneWest committed common law defamation by falsely misrepresenting to credit reporting agencies that his mortgage was delinquent when it was, in fact, current.  (Id. at ¶ 82-89).  Next, the plaintiff alleges that each of OneWest's assessments of a late fee after May 1, 2008, is a breach of the mortgage and deed of trust executed by the plaintiff, as modified by the Agreed Order entered in the plaintiff's bankruptcy proceeding.  (Id. at ¶ 92).  Finally, the plaintiff alleges that OneWest's false representations to the credit reporting agencies were also negligent.  (Id. at ¶ 100).

ease of reference, each claim for relief will be called a "Count" in this Memorandum Opinion and Order.

5

Count VII arises under the Real Estate Settlement Practices Act, 12 U.S.C. § 2601, *et seq.* ("RESPA").  (Id. at ¶¶ 102-112).  Specifically, the plaintiff alleges that he or his counsel sent three letters to OneWest that constituted qualified written requests within the meaning of 12 U.S.C. § 2605(e). (Id. at ¶¶ 105-107).  According to the plaintiff, OneWest's failure to respond to these requests resulted in three separate violations of the RESPA. (Id. at ¶¶ 108-110).  First, OneWest failed to acknowledge receipt of the requests within 20 days as required by 12 U.S.C. § 2605(e)(1).  (Id. at ¶ 108).  Second, OneWest failed to correct or otherwise respond to any of the requests within 60 days as required by 12 U.S.C. § 2605(e)(2).  (Id. at ¶ 109).  Third, OneWest failed to protect the plaintiff's credit rating after receipt of the requests as required by 12 U.S.C. § 2605(e)(3).  (Id. at ¶ 110).

Finally, Count VIII arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").  (Id. at ¶¶ 113-123).  In particular, the plaintiff alleges that OneWest's actions as a "debt collector" constituted three violations of the FDCPA.  (Id. at ¶¶ 119-121).  First, each of OneWest's demands for payments that are not due is a false representation of the character, amount or legal status of a debt in violation of 15 U.S.C. § 1692e(2)(A). (Id. at ¶ 119).  Second, each of OneWest's demands for payment of a late fee charge is a false representation of the character, amount, or legal status of a debt in violation of 15 U.S.C. § 1692e(2)(A).  (Id. at ¶ 120).  Third, each of OneWest's demands for payment of a late fee charge is an unfair or unconscionable practice in violation of 15 U.S.C. § 1692f(a).  (Id. at ¶ 121).

On February 26, 2010, in light of the plaintiff's First Amended Complaint, this Court dismissed without prejudice OneWest's Motion to Dismiss [Doc. 6]. [Doc. 10].

On March 15, 2010, OneWest filed the pending Motion to Dismiss [Doc. 11], again

6

arguing that the plaintiff's state claims are preempted by the HOLA.  ([Doc. 11] at 2-4).
Specifically, the plaintiff's first six counts, as described above, are preempted by the HOLA
because each claim is based upon the imposition of late fees or actions purportedly taken
by OneWest in connection with the servicing of the plaintiff's mortgage loan.  (Id. at 4).
Next, OneWest argues that the plaintiff's RESPA and FDCPA claims must also be
dismissed.  (Id. at 4-5).  The plaintiff's RESPA claims fail because he failed to allege any
facts demonstrating actual damages as a result of any alleged violation of RESPA.  (Id. at
5).  Finally, the plaintiff's FDCPA claims fail because OneWest, as mortgagee of the debt,
is not a "debt collector" within the meaning of FDCPA.  (Id.).

On March 29, 2010, the plaintiff filed his Memo in Opposition [Doc. 13], contending
that none of his claims should be dismissed.  ([Doc. 13] at 1).  First, the plaintiff argues that
the HOLA does not preempt claims that seek to enforce mortgage agreements, as do his
state law claims.  (Id.).  Moreover, the plaintiff argues he has alleged sufficient facts to
support his federal law claims.  (Id.).

On April 12, 2010, OneWest filed its Reply [Doc. 22], reasserting its argument that
both the plaintiff's state and federal claims should be dismissed.   ([Doc. 22] at 11).
According to OneWest, the state law claims are preempted because they attempt to
regulate its servicing of the plaintiff's loan (Id. at 1-6); the injury required to support his
RESPA claim is inadequately pled (Id. at 6-8); and OneWest is not covered by the FDCPA,
as it is a "creditor" not a "debt collector."  (Id. at 8-11).

In the meantime, the parties filed three other motions, beginning with OneWest's
Motion to Stay [Doc. 15], filed on April 1, 2010.  In its motion, OneWest requests that this
Court stay all proceedings pending its ruling on OneWest's Motion to Dismiss [Doc.11].

([Doc. 15] at 3).  In support of this request, OneWest cites a high likelihood that all of the plaintiff's state claims will be dismissed based upon preemption.  ([Doc. 16] at 6-7).  In response, the plaintiff argues that his claims are not preempted because they do not challenge the making or terms of the loan, but instead seek remedies for OneWest's breach of the loan agreement.  ([Doc. 17] at 1).[3]

Moreover, on April 5, 2010, OneWest filed a Motion to Strike [Doc. 18].  In its motion, OneWest asks this Court to strike all references to, and all claims asserted against, IndyMac MS.  ([Doc. 18] at 2).  In support of this request, OneWest notes that IndyMac MS is a division of OneWest and that any claims asserted against IndyMac MS, as a separate entity, are redundant and immaterial.  (Id.).  In response, the plaintiff argues OneWest's motion is premature and otherwise inappropriate.  ([Doc. 21] at 1).  Specifically, the plaintiff asserts the motion is premature because without discovery there is no factual basis for determining whether the corporate organization of OneWest and IndyMac MS is such that OneWest is fully liable for all the acts of IndyMac MS.  (Id.)  Next, the plaintiff contends the motion is inappropriate because he continues to receive communications from OneWest under the name of IndyMac MS.  (Id.).[4]

---

[3]Inasmuch as this Order denies in part OneWest's Motion to Dismiss [Doc. 11], and the parties have continued to follow the First Order of Notice [Doc. 5], including the April 16, 2010, deadline for Fed.R.Civ.P. 26(a)(1) disclosures, this Court finds that the defendant's Motion to Stay [Doc. 15] should be, and hereby is, **DENIED**.

[4]Inasmuch as this Court has corrected the caption in this case to reflect that OneWest does business as IndyMac MS, this Court finds it unnecessary and unwarranted to strike all references to IndyMac MS.  *See **Waste Mgmt. Holdings, Inc. v. Gilmore***, 252 F.3d 316, 347 (4th Cir. 2001) (recognizing that a motion to strike is generally viewed with disfavor, as "it is a drastic remedy").  Accordingly, this Court finds that the defendant's Motion to Strike [Doc. 18] should be, and hereby is, **DENIED**.

Finally, also on April 5, 2010, the plaintiff filed a Motion to File a Corrected Memorandum [Doc. 19].  Specifically, the plaintiff seeks to correct the first sentence of Section IV. B., p. 13, of his Memorandum in Opposition [Doc. 13], which the plaintiff admits contains an incorrect statement of one of the plaintiff's claims for relief.  ([Doc. 19] at 1).[5]

## DISCUSSION

### I.    Motion to Dismiss Standard

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true.  ***Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.***, 910 F.2d 139, 143 (4th Cir. 1990).  "[A] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim."  ***Johnson v. Mueller***, 415 F.2d 354 (4th Cir. 1969).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  ***In re Mills***, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed.R.Civ.P. 8(a)(2)).  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." ***Id.*** (internal quotations and citations omitted).  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a

---

[5] Inasmuch as the plaintiff seeks to merely correct one sentence and has provided a corrected version of his Memorandum in Opposition, this Court finds that the plaintiff's Motion to Correct [Doc. 19] should be, and hereby is, **GRANTED**.

complaint suffice if it tenders naked assertions devoid of further factual enhancements."
**Ashcroft v. Iqbal**, — U.S. —, 129 S.Ct. 1937, 1949 (May 18, 2009)(internal quotations and citations omitted).

## II.    HOLA Preemption Standards

The HOLA empowers the Office of Thrift Supervision ("OTS") "to authorize the creation of federal savings and loan associations, to regulate them, and by its regulations to preempt conflicting state law." **In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation**, 491 F.3d 638, 642 (7th Cir. 2007); *see* 12 U.S.C. § 1464.  Under this authority, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2 (the "Regulation"), which is entitled to "no less pre-emptive effect than federal statutes."  **Fidelity Fed. Sav. and Loan Ass'n v. de las Cuesta**, 458 U.S. 141, 153 (1982).  The Regulation provides that:

> OTS hereby occupies the entire field of lending regulation for federal savings associations.  OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.  Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, *without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section* . . ..

12 C.F.R. § 560.2(a) (emphasis added).

In section 560.2(b), the OTS provided illustrative examples of the types of state laws preempted.   Among these listed examples, preempted state laws "include, without limitation, state laws purporting to impose requirements regarding":

> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
> . . .
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or

participation in, mortgages;

. . .

12 C.F.R. § 560.2(b)(5) and (10).

Moreover, the OTS expressly provided, in section 560.2(c), categories of state laws that "are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) . . .." 12 C.F.R. § 560.2(c).  The state laws generally excepted from preemption by the HOLA are:

(1) Contract and commercial law;

(2) Real property law;

(3) Homestead laws specified in 12 U.S.C. 1462a(f);

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds:

(i) Furthers a vital state interest; and

(ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) . . ..

Id.

The OTS has explained, however, that the preemption provision in section 560.2(a) is not intended "to preempt basic state laws such as state uniform commercial codes and state laws governing real property, contracts, torts, and crimes."  OTS, *Lending and Investment*, 61 Fed.Reg. 50951, 50966 (Sept. 30, 1996).  "[T]he purpose of [the exemptions in] paragraph (c) is to preserve the traditional infrastructure of basic state laws

11

that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations." Id. The OTS has also outlined the proper analysis for courts to employ when confronted with interpretive questions under section 560.2(a):

> When analyzing the status of state laws under [the Regulation], the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

Id. at 50966-67. *See also* **Casey v. F.D.I.C.**, 583 F.3d 586, 593 (8th Cir. 2009); **Silvas v. E*TRADE Mortgage Corp.**, 514 F.3d 1001, 1005 (9th Cir. 2008).

In **Jones v. Home Loan Inv., FSB**, No. 2:09-0537, 2010 WL 1238437, at *4 (S.D. W.Va. Mar. 22, 2010), the Honorable Judge John T. Copenhaver, Jr. concisely summarized the process of applying OTS's analysis:

> If a court performs the first step of the OTS's analysis and concludes that the state law bases for plaintiff's claims fall within section 560.2(b), plaintiff's claims are preempted by HOLA. Alternatively, if the court concludes that the state law claim falls outside of section 560.2(b), it must then determine whether plaintiff's claims clearly fit within the confines of permissible state law claims laid out in section 560.2(c). In order to fit within these confines, the court must be satisfied that the state law involved has, at most, only an incidental effect on lending operations.

Next, noting that the Fourth Circuit has "yet to consider the application of section 560(c) to state law claims," Judge Copenhaver considered the "as applied" analysis articulated by the Eighth and Ninth Circuits. **Id.** In particular, those Circuits have interpreted section 560.2 as meaning that any "state law that either on its face or as applied imposes requirements regarding the examples listed in § 560.2(b) is preempted." **Casey**,

12

583 F.3d at 595; *Silvas*, 514 F.3d at 1006.  Under this framework, the "as applied" rule exempts from preemption only those generally applicable state laws that fit within the confines of section 560.2(c) without more than incidentally affecting lending.

Finally, Judge Copenhaver considered the Seventh Circuit's approach, which led to the same result without expressly relying upon the "as applied" rule articulated in the Eighth and Ninth Circuits.  *Jones*, 2010 WL 1238437, at *5.  Specifically, in considering what state laws are exempted from HOLA preemption, the Seventh Circuit balanced  the OTS's authority over the federal savings and loan banks with the ability of consumers to recover under the HOLA's statutory structure. *See **In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation***, 491 F.3d 638, 643 (7th Cir. 2007).  In so doing, the ***Ocwen*** Court noted that the OTS has very limited power to oversee disagreements between the banks and their consumers.   *Id.* (citing to "How to Resolve a Consumer Complaint" 1-2, www.OTS.treas.gov/docs/4/480924.pdf).  More specifically, the ***Ocwen*** Court emphasized that inasmuch as the HOLA provides no private right of action to consumers, consumers have little recourse in disputes with federal savings banks outside of those generally applicable state laws exempted from preemption in section 560.2(c).  *Id.* (citing ***Burns Int'l Inc. v. Western Savings & Loan Ass'n***, 978 F.2d 533, 535-37 (9th Cir. 1992)).  "Against this background of limited remedial authority," the court in ***Ocwen*** "read subsection (c) to mean that OTS's assertion of plenary regulatory authority does not deprive persons harmed by the wrongful acts of savings and loans associations of their basic state common-law-type remedies."  *Id.*  Thus, while the HOLA and the OTS preempt any attempt at state regulation of federal savings banks, the OTS allows states to maintain their state-

law-based causes of action to protect their citizens.[6]  *Id.*

In providing support for its conclusion, the ***Ocwen*** Court quoted at length from an OTS opinion letter similarly relied upon by the courts in ***Casey*** and ***Silvas***.  *Id.* at 644 (quoting OTS Opinion Letter P-96-14, Dec. 24, 1996, at 5).  In this letter, the OTS's chief counsel addressed whether the HOLA preempted Indiana's generally-applicable state law prohibiting deceptive acts and practices in the course of commerce.  Id.  Noting the OTS's indication that it does not intend to preempt state laws establishing basic norms undergirding commercial transactions, the chief counsel determined that the Indiana state law fell within the traditional "contract and commercial law" category properly excluded from preemption under section 560.2(c).  In reaching this determination, the chief counsel emphasized that the impact the law had on lending appeared to be only incidental to the primary purpose of the statute and there was no indication that the law was in conflict with the purpose of the HOLA's preemption provision or the OTS's regulation of federal savings associations.  Id.  Thus, the chief counsel found that the Indiana deceptive acts and practices law was not preempted by federal law.  Id.

Based upon its analysis of the HOLA and the OTS's position as stated in the chief counsel's letter, the ***Ocwen*** Court held that section 560.2(c) preserves those state laws of general applicability only incidentally affecting the banking and lending activities of a federal savings association.  ***Ocwen*** 491 F.3d at 644-45; *see also* ***State Farm Bank v. Reardon***,

---

[6]The ***Ocwen*** Court provided an example for clarity: "Suppose an S & L signs a mortgage agreement with a homeowner that specifies annual interest rate of 6 percent and a year later bills the homeowner at a rate of 10 percent and when the homeowner refuses to pay institutes foreclosure proceedings.  It would be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract."  ***Ocwen***, 491 F.3d at 643-44.

539 F.3d 336, 344 (6th Cir. 2008).  Finding several generally applicable state statutes preempted because they fell within the section 560.2(b) illustrative examples, the *Ocwen* Court clarified that "[n]ot all state statutes that might be invoked against a federal [savings and loan bank] are preempted, any more than all common law doctrines are." *Ocwen*, 491 F.3d at 646.  While the court in *Ocwen* concluded that traditional common law actions of fraud, breach of contract, defamation and slander of title generally avoid HOLA preemption, the result depends on the particular nature of the claims as alleged by the plaintiff.  *Id.* ("The twentieth [claim] alleges fraud, and does not appear to be preempted, though this could depend on the nature of the fraud, which is unexplained.").

In concluding his review of *Casey*, *Silvas*, and *Ocwen*, Judge Copenhaver noted the one commonality among the cases was that each court "considered the specific nature of each state law claim to determine whether an allegation is a state-based cause of action or an attempt at regulation preempted by section 560.2(b)."  *See also Watkins v. Wells Fargo Home Mortg.*, 631 F.Supp.2d 776, 782 (S.D. W.Va. 2008) ("Whatever the claim, a court must look at the underlying allegations proffered in support of the claim and ask on which side of the *Ocwen* court's ledger they fall.").

## III.    Analysis

OneWest moves to dismiss the plaintiff's Complaint, including both the state and federal law claims stated therein.  Specifically, OneWest contends the plaintiff's state law claims are preempted by the HOLA, and his federal law claims are either inadequately or inaccurately pled.  This Court will now consider each claim in turn.

A.       **State Law Claims**

In Counts I, II, and III, the plaintiff asserts that the letters written by OneWest violated the WVCCPA, as did the late fees it imposed on the plaintiff's account.  In Count V, the plaintiff also asserts that OneWest's imposition of late fees breached the mortgage and deed of trust executed by the plaintiff, as modified by the Agreed Order entered in the plaintiff's bankruptcy proceeding.  Finally, in Counts IV and VI, the plaintiff asserts that OneWest committed negligence and defamed him by informing credit reporting agencies that his mortgage was delinquent.

In considering whether any of these claims are preempted by the HOLA, the Court will first determine whether a claim matches one of the examples provided in section 560.2(b).  If so, the claim is preempted.  Alternatively, the Court will determine whether a claim fits within the permissible state law claims laid out in section 560.2(c), by analyzing whether the state law has, at most, only an incidental effect on lending.

1.       **WVCCPA Claims**

i.       **Letters Sent Directly to Plaintiff**

In Count I, the plaintiff claims that the letters written after September 30, 2009, constituted violations of W.Va. Code § 46A-2-128(e), which generally prohibits a debt collector from  communicating  with a consumer whenever it "appears" or "could be easily ascertained" that he or she has attorney representation.  In support of this claim, the plaintiff alleges that OneWest knew as of September 30, 2009, that the plaintiff was represented by counsel with respect to the debt because his counsel wrote a letter that day to the attorneys who represented IndyMac in connection with the plaintiff's bankruptcy.

16

In its motion, OneWest argues that the HOLA preempts this claim because restricting to whom OneWest may communicate regarding its mortgage loans and any defaults under it implicates the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" by federal savings banks.   12 C.F.R. § 560.2(b)(10).  Specifically, OneWest argues, such a restriction interferes with its "servicing" of mortgage loans.  In support of this argument, OneWest cites **Murillo v. Aurora Loan Services, LLC**, No. C 09-00504 JW, 2009 WL 2160579 at *11 (N.D. Cal. July 17, 2009), which found that a California law requiring a particular declaration be included in a notice of default was preempted pursuant to section 560.2(b)(10) because it "concern[ed] the processing and servicing of Plaintiffs' mortgage."

In response, the plaintiff argues that this claim is not preempted because the statute merely requires OneWest to send the notices of default to another address.  The statute does not regulate the frequency of OneWest's communications nor the manner in which the loan is serviced.  Further, unlike the California statute in **Murillo**, this West Virginia statute does not regulate the content of the notice.  Thus, the plaintiff argues, **Murillo** is inapplicable to the instant case.

In reply, OneWest outlines the burden this particular state provision would place on its servicing of loans:

> First, the federal savings bank must establish guidelines or otherwise train its employees in how to comprehend and then note for the file when it "appears" that there is attorney representation.  It must then develop procedures for changing its communications process in connection with servicing the mortgage loan, including it [sic] procedures for sending out monthly statements and all other correspondence as well as making telephonic communications.  If the federal savings bank has not been given the attorney's name and address, the federal savings bank must then take

17

steps to try and ascertain this information because it may not, under the
WVCCPA, communicate directly with a debtor . . . if the federal savings bank
can "easily ascertain" such information.  Finally, the federal savings bank
runs the risk of falling afoul of the WVCCPA if it does not expend the amount
of effort to ascertain such information that a trier of fact might consider to fall
within the scope of "easily ascertaining" such information.

([Doc. 22] at 3).

This Court finds OneWest's description of the burden to be more accurate.
Moreover, this Court finds that the burden, as described, implicates the "[p]rocessing,
origination, servicing, sale or purchase of, or investment or participation in, mortgages."
12 C.F.R. § 560.2(b)(10).  Alternatively, this Court finds that the undertaking required by
the language "appears" and "easily ascertained" would more than incidentally affect
lending.  *See **Jones***, 2010 WL 1238437 at *7 (finding a negligence claim based upon a
federal savings bank's alleged failure to make reasonable inquiry regarding the necessity
for a power of attorney preempted on similar bases).  Inasmuch as the OTS has the sole
authority to impose the above-described burden upon federal savings banks, the plaintiff's
claim based upon W.Va. Code § 46A-2-128(e) is preempted by section 560.2(b)(10).
Accordingly, Count I is **DISMISSED WITH PREJUDICE** inasmuch as it is based upon said
provision.

### ii.    Imposition of Late Fees

In Counts I, II, and III, the plaintiff alleges three violations of the WVCCPA based
upon OneWest's imposition of late fee charges.  First, in Count I, the plaintiff claims that
the letters written after July 15, 2009, violated W.Va. Code 46A-2-127(d), which prohibits
a debt collector from falsely representing the character, extent, or amount of a claim
against a consumer.  In support of this claim, the plaintiff alleges he received letters from

18

OneWest dated July 16, 2009, August 3, 2009, September 16, 2009, October 7, 2009, December 4, 2009, December 16, 2009, December 18, 2009, January 19, 2010, and January 21, 2010, claiming he was one month behind on his loan and imposing a late fee charge.  These were false representations, the plaintiff argues, because the Agreed Order in connection with his bankruptcy provided that the one payment for which he was in arrears would be added onto the end of the mortgage.  Moreover, the plaintiff alleges he has made his monthly mortgage payments each month under the Agreed Order, including the first payment due in May 2008.

Second, in Count II, the plaintiff claims each late fee constitutes a separate violation of W.Va. Code § 46A-2-128(d), which declares unfair or unconscionable "[t]he collection of or the attempt to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating the obligation and by statute . . .."  In support of this claim, the plaintiff again alleges he has remained current under the Agreed Order since it took effect in May 2008.

Finally, in Count III, the plaintiff claims each late fee constitutes a separate violation of W.Va. Code § 46A-6-104, which declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce . . .."  In support of this claim, the plaintiff alleges he has remained current under the Agreed Order.

In its motion, OneWest argues these claims are preempted because restricting its imposition of late fees would purport to impose requirements regarding "[l]oan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees . . .."  12 C.F.R. § 560.2(b)(5).  In support of this argument,

OneWest cites *Haehl v. Washington Mutual Bank, F.A.*, 277 F.Supp.2d 933 (S.D. Ind. 2003), which held that "[s]ection 560.2 expressly preempts state laws purporting to regulate loan-related fees and the processing and servicing of mortgages." *Id.* at 941.  In *Haehl*, the court dismissed a claim concerning a federal bank's imposition of a "reconveyance fee," stating that a state regulation which would restrict the assessment of fees "is exactly the type of state law regulation that is expressly preempted by § 560.2(b)(5)." *Id.* at 943.  As in *Haehl*, OneWest argues, the plaintiff "seeks to apply the WVCCPA so as to restrict, or impose limitations on, the imposition of fees by a federal savings bank subject to HOLA." ([Doc. 12] at 5).

In response, the plaintiff argues that none of these provisions regulate whether a late fee may be imposed or the amount of any late fee.  Instead, these provisions merely provide a remedy for violations of the terms of the mortgage agreement that govern the assessment of those fees.  In fact, the plaintiff argues, these claims are virtually identical to those claims allowed to proceed in *Ocwen*.  Specifically, in *Ocwen*, the Seventh Circuit found that the HOLA did not preempt breach of contract claims based upon the imposition of late fees for payments that were not late.  *Ocwen*, 491 F.3d at 645.  Moreover, the plaintiff argues that *Haehl* is distinguishable because, unlike here, the Indiana statute purported to regulate the type and amount of fees that could be imposed.  Finally, the plaintiff argues that the OTS has noted a distinction between laws affecting the content of a loan contract and those affecting the enforcement of the loan's terms.  For example, in an opinion letter discussing a previous ruling that an Indiana law prohibiting unfair and deceptive practices was not preempted, the OTS explained:

> The Indiana Deceptive Acts and Practices Statute did not attempt to regulate the . . . amount of a loan-related fee, but rather, sought only to protect the integrity of such . . . charges once made.  A federal thrift, as part of a loan contract, could decide what fees to charge and would only run afoul of the Indiana statute if it did not abide by its agreements or representations regarding those fees . . ..

OTS Opinion Letter P-99-3, Mar. 10, 1999, at 13, n. 63.

Because the WVCCPA provisions at issue here do not attempt to regulate what fees OneWest can charge, the plaintiff argues that these provisions can be utilized against OneWest for charging late fees for a payment that is not late under the loan contract, as modified by the Agreed Order.

In reply, OneWest cites the Memorandum Opinion and Order Granting Defendants' Motion for Partial Summary Judgment and Motion to Dismiss in **Owens v. Central Mortgage Company**, C.A. No. 3:08-cv-114 (N.D. W.Va. Dec. 22, 2008).  In that Opinion, this Court found certain WVCCPA claims based upon prepayment and late fees preempted by the HOLA.  **Owens**, Op., pp. 12-13.

The Court first notes that OneWest's reliance upon **Owens** is misplaced, as its facts are distinguishable from those in the instant case.  In particular, the plaintiff in **Owens** alleged that the defendants had violated West Virginia Code §§ 46A-3-110(b), 46A-2-127(g), and 46A-2-128(d) by charging the plaintiff prepayment and late fees that were otherwise permitted by the loan agreement.  (Am. Compl. [Doc. 21], at ¶¶ 41-44).  In fact, the defendant in **Owens** argued that "the provisions of a prepayment addendum to Plaintiff's promissory note . . . control and are in no way impaired, modified, cancelled or otherwise affected by West Virginia Code Section 46A-3-110(b) and are valid in every respect.  *The same can be said for the provisions of Plaintiff's note regarding late charges*

21

. . . ." (Memo. In Support of Defendant's Mot. For Partial Sum. Judgment [Doc. 13-1], at ¶¶ 10-11) (emphasis added).  Unlike Owens, the plaintiff is not attempting to impair, modify, cancel, or otherwise affect the terms regarding late fees in his agreement with OneWest. Instead, the plaintiff readily admits the agreement controls but argues that OneWest has breached the agreement, and thus, that his WVCCPA claims fall within the category of "contract and commercial law" claims exempted from preemption by section 560.2(c)(1). This Court agrees with the plaintiff's characterization and finds that ***Owens*** is not dispositive of the plaintiff's claims regarding the late fees imposed in this case.

First, like the Indiana state provisions in the March 1999 OTS Opinion, the WVCCPA provisions utilized here do not purport to regulate late fees, including what amount can be charged.  Thus, at step one, section 560.2(b)(5) is not implicated.  At step two, these WVCCPA provisions, as applied, fit within the category of "contract and commercial law" exempted from preemption by section 560.2(c)(1).  In so concluding, this Court finds that these provisions, as applied, have no more than an incidental effect on lending operations. According to the plaintiff's allegations, which control at this point of the case, the plaintiff and IndyMac entered into an Agreed Order providing that the sole payment for which the plaintiff was in arrears would be added onto the end of the mortgage.  Moreover, the plaintiff alleges he has made his monthly mortgage payments each month under the Agreed Order, including the first payment due in May 2008.  Thus, the plaintiff claims that OneWest's continued imposition of late fees is a breach of their agreement, as modified by the Agreed Order.  Based upon this alleged breach, this Court finds that the plaintiff has sufficiently stated claims pursuant to W.Va. Code §§ 46A-2-127(d), 46A-2-128(d), and 46A-

6-104.  Accordingly, the plaintiff's claims based upon these provisions **MAY PROCEED**.[7]

>   **2.      State Common Law Claims**

>       **i.      Breach of Contract**

In Count V, the plaintiff asserts OneWest's imposition of late fees breached the mortgage and deed of trust executed by the plaintiff, as modified by the Agreed Order entered in the plaintiff's bankruptcy proceeding.   For the same reasons stated above regarding the WVCCPA claims based upon OneWest's imposition of late fees, the plaintiff's breach of contract claim **MAY PROCEED**.

>       **ii.      Defamation and Negligence**

In Counts IV and VI, the plaintiff claims OneWest committed negligence and defamed him by informing credit reporting agencies that his mortgage was delinquent.   In support of these claims, the plaintiff alleges he was current on his loan payments, when OneWest reported that he was delinquent.

In its motion, OneWest argues that the plaintiff's defamation and negligence claims implicate its imposition of "late fees" and its "servicing" of the plaintiff's loan, and thus, are preempted by sections 560.2(b)(5) and (10).  Specifically, OneWest asserts the plaintiff's claims attempt to:

>   control how a federal savings bank services its mortgage loans by imposing
>   restrictions on fees it imposes (including a federal savings bank's right to
>   determine when late fees are to be imposed), by imposing restrictions on the
>   circumstances under which a mortgage loan may be deemed delinquent, and

---

[7]In so concluding, this Court recognizes that states cannot regulate the terms of the loan agreements entered into by federal savings banks.  However, even a federal savings bank must abide by its agreements.  When it does not, "[i]t would be surprising for a federal regulation to forbid [a] homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract."  ***Ocwen***, 491 F.3d at 643-644.

by imposing restrictions on which determinations of delinquency may be reported to credit bureaus.

([Doc. 12] at 9).

In response, the plaintiff argues his defamation and negligence claims fit within the category of "tort law" claims exempted from preemption by section 560.2(c)(4).   In particular, the plaintiff asserts these claims do not attempt to regulate the terms of his loan. Rather, the plaintiff argues, these claims arise from OneWest's breach of the terms involving the imposition of late fees.  In reply, OneWest argues that the core of the plaintiff's defamation and negligence claims is to challenge the late fees imposed, and thus, these "tort" claims are preempted.

First, this Court finds that a more proper starting point to this analysis is to determine whether the plaintiff's common law claims for defamation and negligence are preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").  Specifically, pursuant to section 1681h(e), "no consumer may bring any action or proceeding in the nature of defamation . . . or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer."  Thus, the FCRA allows for only those common law claims that are based upon allegations that rise to the level of malice or willful intent to injure the consumer.  *See* **Thornton v. Equifax, Inc.**, 619 F.2d 700, 703 (8th Cir. 1980) (adopting the **New York Times Co. v. Sullivan**, 376 U.S. 254, 279-280, standard, which requires that a statement be made with "knowledge that it was false or with reckless disregard of whether it was false or not").  Here, in support of his defamation claim, the plaintiff alleges that OneWest's representations to credit reporting

24

agencies were "willful, wanton or made with disregard" for his rights.  ([Doc. 9] at ¶ 88).

Thus, the plaintiff's defamation claim is safe for now from FCRA preemption.  However, in

support of his negligence claim, the plaintiff alleges only that OneWest's representations

to credit reporting agencies were made "negligently."  (Id. at ¶ 100).  Thus, pursuant to

section 1681h(e), the plaintiff's common law negligence claim is preempted.  Accordingly,

Count VI is **DISMISSED WITH PREJUDICE**.

      Next, this Court must analyze the plaintiff's common law claim of defamation for

HOLA preemption.  In so doing, this Court agrees with ***Ocwen***, in which the Seventh Circuit

concluded that a common law claim of defamation is "a good example of [a] claim that the

[HOLA] does not preempt."  ***Ocwen***, 491 F.3d at 648.  The plaintiffs there alleged that

Ocwen had defamed them by "falsely representing that they were delinquent in repaying

their loans."  ***Id.***  Similarly, the plaintiff here alleges OneWest defamed him by making false

representations to credit reporting agencies regarding the status of his account.  (See [Doc.

9] at ¶¶ 82-89).  Like in ***Ocwen***, the plaintiff's defamation claim is not preempted at step

one.  Though pursuant to section 560.2(b) the OTS has exclusive authority to regulate

OneWest's fixing of fees as well its setting of standards for servicing mortgages pursuant

to section 560.2(b), section 560.2(c) does not deprive a defamed consumer his basic state

common law remedy.  Moreover, prohibiting OneWest and other federal savings banks

from defaming consumers certainly has no more than an incidental effect on lending

operations.  Therefore, this Court finds that the plaintiff has sufficiently stated a claim for

common law defamation.  Accordingly, Count IV **MAY PROCEED**.

B.     Federal Law Claims

1.     RESPA Claims

In Count VII, the plaintiff claims OneWest's failure to respond to three qualified written requests resulted in three separate violations of the RESPA.  First, the plaintiff alleges OneWest failed to acknowledge receipt of the requests within 20 days as required by 12 U.S.C. § 2605(e)(1).  Second, the plaintiff alleges OneWest failed to correct or otherwise respond to any of the requests within 60 days as required by 12 U.S.C. § 2605(e)(2).  Third, the plaintiff alleges OneWest failed to protect his credit rating after receipt of the requests as required by 12 U.S.C. § 2605(e)(3).

In its motion, OneWest argues that the plaintiff's RESPA claims must be dismissed for failure to allege any pecuniary loss.  In support of this argument, OneWest cites *Allen v. United Financial Mortgage Corp.*, 660 F.Supp.2d 1089 (N.D. Cal. 2009), which held that the plaintiff's failure "to allege any pecuniary loss attributable to the violation [was] fatal to [his] RESPA claim." *Id.* at 1097.  Similarly, in *Peay v. Midland Mortgage Co.*, 2010 WL 476677 (E.D. Cal. Feb. 3, 2010), the plaintiffs' vague assertion that they "continue to suffer damages and costs of suit" as the result of the defendant's "failure to comply with the notice of loan servicing and [qualified written requests] response provisions of RESPA" was insufficient to state a RESPA claim. *Id.* at *4.  Because the plaintiff, here, has vaguely asserted he "has suffered injury," OneWest argues his RESPA claims must also fail.

In response, the plaintiff argues that he has sufficiently pled pecuniary injury in the form of inaccurately imposed late fees and damage to his credit rating.  Specifically, he argues that had OneWest performed the investigation required by the RESPA, and made

26

the corrections to his account required by the RESPA, late charges would not have been imposed and OneWest would not have wrongly informed credit reporting agencies that his loan was delinquent.  Moreover, the plaintiff argues that the RESPA does not require pecuniary damages.  The Act also allows recovery of non-economic damages, such as damages for emotional distress or defamation.

In reply, OneWest argues that the plaintiff merely speculates that had OneWest properly responded, there would have been no imposition of late charges on his account. Moreover, OneWest argues the plaintiff's claim that it failed to protect his credit rating must be dismissed because the plaintiff has not pled that he was actually denied credit as a result of the allegedly false report to the credit reporting agencies.

With regard to OneWest's failure to respond, this Court finds that the plaintiff has sufficiently stated a claim, including the element of damages.  From the substance of the provisions relied upon, 12 U.S.C. §§ 2605(e)(1) and (2), as well as the general factual allegations contained in the Complaint, OneWest's allegedly inaccurate imposition of late fees satisfies the pleading requirements for damages.  However, this Court agrees with OneWest's position with regard to the plaintiff's RESPA claim for failure to protect his credit rating.  The case law is clear.  In order to support a RESPA claim under 12 U.S.C. § 2605(e)(3), a plaintiff must allege a denial of credit based upon inaccurate reporting.  *See Hutchinson v. Del. Sav. Bank. FSB*, 410 F.Supp.2d 374, 383 (D.N.J. 2006) (sustaining a section 2605(e)(3) claim based upon plaintiffs' inability to obtain further financing as a result of negative reports).  Here, the plaintiff has failed to present such an allegation. Accordingly, the plaintiff's RESPA claims based upon 12 U.S.C. §§ 2605(e)(1) and (2) **MAY**

27

**PROCEED**; however, the plaintiff's RESPA claim based upon 12 U.S.C. § 2605(e)(3) is **DISMISSED WITHOUT PREJUDICE**.

### 2.    FDCPA Claims

In Count VIII, the plaintiff claims OneWest's actions in its role as a "debt collector" resulted in three violations of the FDCPA.  First, the plaintiff alleges each of OneWest's demands for payments that were not due was a false representation of the character, amount or legal status of a debt in violation of 15 U.S.C. § 1692e(2)(A).  Second, the plaintiff alleges each of OneWest's demands for payment of a late fee charge was also a false representation of the character, amount, or legal status of a debt in violation of 15 U.S.C. § 1692e(2)(A). Third, the plaintiff alleges each of OneWest's demands for payment of a late fee charge was an unfair or unconscionable practice in violation of 15 U.S.C. § 1692f(a).

In its motion, OneWest argues that the plaintiff's claims under FDCPA fail because it is not a "debt collector," which the Act defines as certain entities or individuals who attempt to collect debts "owed or due or asserted to be owed or due *another*."  15 U.S.C. § 1692(a)(6) (emphasis added).  Specifically, OneWest asserts its purported actions were taken to collect its own debt.  In support of this assertion, OneWest emphasizes that even the plaintiff admits as much.  First, the plaintiff alleges that he entered into a mortgage loan with IndyMac.  ([Doc. 9] at ¶ 8).  He then alleges that "[i]n or around March 2009, IndyMac Bank was purchased by defendant One West [sic] Bank, F.S.B."  (Id. at ¶ 20.)  Finally, the plaintiff alleges that "[t]hereafter, upon information and belief, Indy Mac Mortgage Services became a division of defendant One West [sic] Bank."  (Id. at ¶ 21).  Thus, because

28

OneWest did not act as a "debt collector," as defined by the FDCPA, the plaintiff's FDCPA claims should be dismissed for failure to state a claim.

In response, the plaintiff argues that his FDCPA claims should not be dismissed for two reasons.  First, the plaintiff has alleged that OneWest affirmatively stated, in correspondence to him, that: "This company is a debt collector." ([Doc. 9] at ¶ 116).  Thus, the plaintiff argues that, at this stage, he is entitled to the inference that OneWest has admitted coverage under the FDCPA.  Second, the plaintiff argues OneWest is a debt collector because his loan was allegedly in default at the time OneWest acquired it.  In support of this argument, the plaintiff cites 15 U.S.C. § 1692a(6)(F):

The term [debt collector] does not include –

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) *concerns a debt which was not in default at the time it was obtained* . . .

15 U.S.C. § 1692a(6)(F) (emphasis added).

Moreover, the plaintiff cites ***Schlosser v. Fairbanks Capital Corp.***, 323 F.3d 534, 539 (7th Cir. 2003), in which the Seventh Circuit concluded that the exclusion in section 1692a(6)(F)(iii) did not apply because the defendant had attempted to collect a debt that it asserted to be in default, and because that asserted default existed when the company acquired the debt.  In reaching this conclusion, the ***Schlosser*** Court interpreted the FDCPA as "treat[ing] assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." ***Id.*** at 536.        In reply, OneWest argues that it is a "creditor" under 15 U.S.C. § 1692a(4), which states that a creditor does *not* include "any person to the extent that he receives an assignment or

transfer or a debt in default *solely for the purpose of facilitating collection of such debt for another*." (Emphasis added). OneWest argues it did not obtain the plaintiff's mortgage loan or any other mortgage loan "solely for the purpose of facilitating collection of such debt for another." Instead, OneWest argues it "stepped into the shoes . . . of IndyMac Bank, F.S.B., as a result of the bank's failure." ([Doc. 22] at 9). As such, OneWest argues ***Schlosser*** is clearly distinguishable. In ***Schlosser***, the defendant had specifically acquired over 12,000 allegedly delinquent high-interest mortgages for the purpose of collecting them. Here, the Federal Deposit Insurance Corporation ("FDIC") negotiated an agreement with OneWest in connection with the FDIC's responsibilities as conservator of IndyMac, a failed institution.[8]

This Court agrees with OneWest's interpretation of the FDCPA regarding the distinction between a "creditor" and a "debt collector." First, this Court recognizes that the FDCPA applies only to debt collectors. Second, this Court recognizes that section 1692a(6)(F)(iii) provides for a situation in which an assignee is a debt collector for purposes of debts in default upon receipt of the assignment. However, in reading the Act as a whole, this Court finds that 1692a(6)(F)(iii), as interpreted in ***Schlosser***, provides merely one benchmark for determining when an assignee attains the status of a "debt collector." Ultimately, this Court must still determine whether OneWest obtained the plaintiff's

---

[8]In so asserting, OneWest requests that this Court take judicial notice of the information provided on the FDIC's website regarding the events surrounding OneWest's acquisition of the plaintiff's mortgage, citing ***Curcio v. Wachovia Mortg. Corp.***, 2009 WL 3320499 (S.D. Cal. 2009) and ***Brackett v. Corinthian Mortg. Corp.***, 2010 WL 1254705 (Bkrtcy. N.D. W.Va. 2010) (finding that information provided by federal agencies on their web sites fall within the scope of facts of which judicial notice may be taken under FRE 201(b)).

30

mortgage "solely for the purpose of facilitating collection of such debt . . .."  15 U.S.C. § 1692a(4).  In taking judicial notice of the events surrounding the FDIC's sale of IndyMac to OneWest, this Court cannot find that OneWest's sole purpose for purchasing IndyMac was to facilitate debt collection, including the collection on the plaintiff's mortgage. OneWest received all deposits of IndyMac without regard to whether a debt was in default. Thus, OneWest is not a "debt collector," and as such, the plaintiff cannot state a FDCPA claim against it.  Accordingly, Count VIII is **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the foregoing reasons, the Court finds that the defendant's Motion to Dismiss [Doc. 11] should be **GRANTED IN PART** and **DENIED IN PART**, the defendant's Motion to Stay [Doc. 15] should be **DENIED**, the defendant's Motion to Strike [Doc. 18] should be **DENIED**, and the plaintiff's Motion to Correct [Doc. 19] should be **GRANTED**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED**: April 19, 2010.


JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

31